**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

No. 97-30470
(Summary Calendar)

_____

JAMES R. WYKLE,

Plaintiff-Appellee,

versus

CITY OF NEW ORLEANS,

Defendant-Appellant.

_____

Appeal from the United States District Court
For the Eastern District of Louisiana
(96-CV-1369)

_____

July 23, 1998

Before SMITH, WIENER and BARKSDALE, Circuit Judges.

PER CURIAM:[*]

Defendant-Appellant City of New Orleans ("the City") appeals the district court's judgment in favor of Plaintiff-Appellee James R. Wykle, finding the City strictly liable and alternatively guilty of ordinary negligence for Wykle's injuries suffered as a result of his fall precipitated by tripping in a hole on Bourbon Street at St. Peter Street. The City challenges the district court's finding that the hole created an unreasonably dangerous condition, as well

_____

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

as its failure to assess any comparative fault to Wykle.  The City further contends that the damage award was excessive and that the district court erred in failing to order that the amount awarded for future medical expenses be placed in a reversionary trust for Wykle's benefit.  Finding no reversible error in the district court's judgment following the bench trial of this case, we affirm.

I

FACTS AND PROCEEDINGS

Wykle, a 45 year old resident of North Carolina, was afflicted with polio as a child, causing severe limitation in his upper extremities and his left leg.  While visiting New Orleans in September 1995, he sustained permanent and disabling injuries as a result of a pedestrian accident in New Orleans.  Wykle was walking with several friends on Bourbon Street when his right foot went into a relatively deep, unprotected hole which was filled with water, causing him to fall.  The hole had been previously used for the placement of a barricade pole, but because of its damaged condition, it was no longer suitable for such use.  Wykle suffered an acute fracture of his right knee which required open knee surgery and tendon repair, resulting in a thirty-five percent permanent, partial functional disability to his right knee.[2] Prior to the accident, Wykle had relied heavily on his right leg, which

---

[2]Wykle also suffered chondromalacia patella, quadriceps muscle and tendon deficiency, displaced or patella baja, osteoarthritis with increased likelihood of arthritis, aggravation to preexisting poliomyelitis, genu recurvatum, left knee and ankle pain, and arthritis of the left leg.

had been completely normal.

Wykle brought suit against the City urging responsibility on the basis of strict liability and, alternatively, ordinary negligence. The district court concluded that the City was strictly liable, reasoning that (1) it had notice of the vice or defect prior to the accident with reasonable opportunity to remedy the defect, as jointly-stipulated; and (2) the defect posed an unreasonable risk of harm, given its location and the fact that a pole could no longer be inserted in this particular hole. The court opined critically that the City was apparently more concerned about vehicular traffic than pedestrian traffic, even though that part of Bourbon Street served as a pedestrian mall at various times.

Alternatively, the district court found "the City guilty of ordinary negligence in failing to correct a defect in a timely and safe manner and in failing to barricade or otherwise protect the public from this dangerous hole." The court observed that, "the most nominal of prevention could have rectified this dangerous condition . . . ." Moreover, he explained that the water in the hold probably disguised its existence.

Next, the court considered the issue of comparative negligence, concluding that Wykle exercised reasonable care for his safety, and therefore assessed no percentage of comparative fault to him. The court took into account that Bourbon Street is "a distracting type of street which calls a pedestrian's attention to stores, businesses and other facilities . . . . Their attention is

3

only peripherally directed towards the street and down towards their feet." Further, the court found that because of his previous health problems, Wykle was "looking ahead to make sure there was sufficient distance between himself and those in front of him," and that doing so was not a breach of his duty of reasonable care. Finally, the court noted that the existence of the hole was likely concealed by the accumulation of rainwater "such that [Wykle's] attention may not, even had he seen the water, have indicated to him that there was a hole beneath that water."

As for the quantum of damages, the district court stated that Wykle was entitled to general damages for pain and suffering, scarring (there is a large scar over the surface of Wykle's knee, which will not reduce, and other scarring from infections), physical disability as a result of the thirty-five percent permanent partial functional disability to his right knee, and loss of enjoyment of life. Regarding loss of enjoyment of life, the court was satisfied that Wykle had participated in hiking, camping, swimming (the court noted that he was able and had the capacity to swim, albeit on a limited basis because of his previous poliomyelitis), martial arts, and various other sports activities. The court concluded that, although Wykle had not engaged in some of these activities in a number of years, his loss of enjoyment of life had been significantly diminished by his fall. Moreover, the court concluded, the fall caused mental anguish which would become exacerbated over time.

The court commented that Wykle "is a courageous and tenacious

4

individual who does not present himself to this Court as a malingerer, nor one who does not achieve to advance himself. He has worked for a substantial portion of his adult life and has done so with a very serious handicap from . . . poliomyelitis." The court further noted that, in spite of the poliomyelitis, Wykle had been a security guard at a hotel for a substantial period of time, apparently functioning quite capably in that job. The district court admired Wykle's desire and drive, commenting that "many other individuals who appear in this Court would not have exercised that desire to work and continue about their normal business with a similar sort of injury." In considering the instant case, the district court asked, rhetorically, "Does that make his injury more severe?"

The court answered its own question in the affirmative, explaining that "[t]his gentleman has had one functional leg that was not impaired from poliomyelitis. That functional leg has now been totally destroyed for the remainder of his life with very limited possibilities of recovering." The court noted that "[t]he City must take its victim as it found him," and determined that "[g]iven his delicate condition and given what damage has been done to him, . . . he has suffered a very life-altering injury which may not have occurred to an average person of average health, but he must be compensated for the horrific outcome that he will suffer in the future and has suffered to date." Accordingly, the district court awarded Wykle general damages of $650,000, which covered past, present, and future pain and suffering, physical disability,

scarring, loss of enjoyment of life, and mental anguish.

The court also awarded past wages and medical expenses as stipulated. In addition, relying on the deposition testimony of physicians and other experts, the court awarded future medicals of $15,000, plus $8,500 for a leg brace. Finally, the court awarded $50,000 for loss of earning capacity, although "there ha[d] been little, if any, testimony with respect to comparison of past lost wages and earnings with respect to earning capacity." Nevertheless, relying on Hobgood v. Aucoin,[3] the court was "satisfied, given the testimony of the experts herein, that [Wykle's] earning capacity — not actual earnings lost, but his actual earning capacity — has been impacted because of this injury."

## II

### ANALYSIS

We review the factual findings of the district court for clear error.[4] The allocation of fault is a factual issue, reviewed under the clearly erroneous standard.[5] In addition, "[a] trial judge's

---

[3]574 So. 2d 344 (La. 1990)(holding that $50,000 award for loss of earning capacity to 36 year old plaintiff, who received back injury in automobile accident resulting in 10% disability rating, was not an abuse of discretion despite limited evidence on the economic impact of his partial disability on his earning capacity or ability).

[4]FED.R.CIV.P. 52(a); see e.g., United States v. Alaniz-Alaniz, 38 F.3d 788, 790 (5th Cir. 1994), cert. denied, 514 U.S. 1041, 115 S. Ct. 1412, 131 L. Ed. 2d 297 (1995).

[5]Texas Eastern Transmission Corp., v. McMoRan Offshore Exploration Co., 877 F.2d 1214, 1223 (5th Cir.), cert. denied, 493 U.S. 937, 110 S. Ct. 332, 107 L. Ed. 2d 321 (1989); Transorient Navigators Co., S.A. v. M/S Southwind, 788 F.2d 288, 291 (5th Cir.

assessment of damages is a finding of fact which we review under the clearly erroneous standard."[6]  "This court will not overturn a damage award unless the trier of fact abused its discretion."[7]

A finding of fact is clearly erroneous only "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."[8]  We cannot reverse the decision of the district court simply because we would have decided the case differently.[9]  In fact, "[i]f the district court's account of the evidence is plausible in light of the record viewed in its entirety," we will not reverse it, even if convinced that had we "been sitting as the trier of fact, [we] would have weighed the evidence differently.  Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly

---

1986).

[6]<u>Hernandez v. M/V Rajaan</u>, 841 F. 2d 582, 587 (5th Cir.)(citing <u>Sosa v. M/V LAGO IZABAL</u>, 736 F. 2d 1028, 1035 (5th Cir. 1984)(citing <u>Caldarera v. Eastern Airlines, Inc.</u>, 705 F.2d 778, 783 (5th Cir. 1983)), <u>cert. denied</u>, 488 U.S. 981, 109 S. Ct. 530, 102 L. Ed. 2d 562 (1988) <u>and</u> 488 U.S. 1030, 109 S. Ct. 837, 102 L. Ed. 2d 970 (1989).

[7]<u>Id.</u> (citing <u>Bartholomew v. CNG Producing Co.</u>, 832 F.2d 326, 331 (5th Cir. 1987)(citing <u>Hawkes v. Ayers</u>, 537 F.2d 836, 837 (5th Cir. 1976)).

[8]<u>Anderson v. City of Bessemer City, North Carolina</u>, 470 U.S. 564, 573, 105 S. Ct. 1504, 1511, 84 L. Ed. 2d 518 (1985)(quoting <u>United States v. United States Gypsum Co.</u>, 33 U.S. 364, 395, 68 S. Ct. 525, 542, 92 L. Ed. 746 (1948)).

[9]<u>Id.</u>

erroneous."[10]

Bourbon Street is the premier tourist attraction street in New Orleans. While it is sometimes blocked off to vehicular traffic, it is common knowledge that, even when it is not, there is a high incidence of pedestrian traffic in the street and crossing the street, and not just at the corners and intersections. Jaywalking on Bourbon Street, at all hours, is commonplace. As noted, the record establishes that the subject hole was filled with rainwater at the time of Wykle's fall. It is elemental that when a hole of this nature on a street of this nature is filled with water, ordinary observation would not reveal the hole's depth, even if only a matter of inches. We find nothing in the record to (1) refute the district court's determination that the hole posed an unreasonable risk of harm, or (2) demonstrate negligence or fault on the part of Wykle.

Admittedly, if we had tried this case without a jury, we may not have reached the same conclusions as the district court. For example, we may have found Wykle guilty of some slight degree of comparative fault, or we may have awarded a lesser or greater quantum of damages than did the district court. The point is that after reviewing the record on appeal, the briefs of the parties, and the opinion of the district court, we are not "left with the

---

[10]Id. at 573-574, 105 S. Ct. at 1511 (citing United States v. Yellow Cab Co., 338 U.S. 338, 342, 70 S. Ct. 177, 179, 94 L. Ed. 150 (1949); Inwood Labs., Inc. v. Ives Labs., Inc., 456 U.S. 844, 102 S. Ct. 2182, 72 L. Ed. 2d 606 (1982)).

definite and firm conviction that a mistake has been committed,"[11] absent which we cannot ascribe clear error to the district court's decision. As a court of error, we cannot substitute our judgment for that of the district court under the well-known standard set forth in the Supreme Court's <u>Anderson</u> decision.[12]

The City's argument that the district court erred in failing to order the placement of future medical expenses, including the costs of the knee braces, in a reversionary trust pursuant to La.R.S. 13:5106 is without merit.[13] The reversionary trust requirement did not exist prior to the 1996 amendment to La.R.S. 13:5106. In <u>Lemaire v. Estate of Harrington</u>,[14] the Louisiana third circuit court of appeal held that the reversionary provisions affect substantive rights and therefore cannot be applied retroactively. As Wykle's accident occurred in September 1995, the reversionary trust requirement is inapplicable.

III

CONCLUSION

For the foregoing reasons, the decision of the district court is, in all respects,

AFFIRMED.

---

[11]<u>Id.</u> at 573, 105 S. Ct. at 1511 (quoting <u>United States v. United States Gypsum Co.</u>, 33 U.S. 364, 395, 68 S. Ct. 525, 542, 92 L. Ed. 746 (1948)).

[12]470 U.S. 564, 105 S. Ct. 1504, 84 L. Ed. 2d 518 (1985).

[13]LA.REV.STAT.ANN. § 13:5106 (West Supp. 1998).

[14]701 So. 2d 484 (La. Ct. App. 1997), <u>writ denied</u>, 709 So.2d 785 (1998).